UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE PROPERTY SCIENCES GROUP, INC.,

    Plaintiff,

    v.

PINNACLE CAPITAL MORTGAGE CORPORATION,

    Defendant.
_____/

No. C 11-2687 PJH

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; ORDER STAYING CASE**

    Before the court is the motion of defendant Pinnacle Capital Mortgage Corporation ("Pinnacle") for an order compelling arbitration of the parties' dispute, and request for dismissal of the action. Plaintiff Property Sciences Group, Inc. ("PSG") opposes arbitration, but also asserts that if arbitration is ordered, the court should condition it on the parties' agreeing in advance that the arbitrator has the authority to impose equitable remedies. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court hereby GRANTS the motion to compel arbitration, DENIES the request for dismissal, ORDERS that the case be stayed pending the arbitration, and DENIES the request to impose the pre-condition sought by PSG.

    PSG, which provides home appraisal and related services, developed a web-based appraisal order management and tracking system called the AMCTrak Order Workflow System ("AMCTrak"), which has been registered with the U.S. Copyright Office. The AMCTrak system is used in real property appraisals. In March 2009, Pinnacle, a mortgage lender, entered into a non-exclusive license agreement ("the Subscription Agreement") with PSG, allowing Pinnacle to access the AMCTrak software and use the system to order, deliver, and manage appraisal services. The Subscription Agreement prohibited Pinnacle

from reverse-engineering, or creating derivative works based on, the AMCTrak software and system.  Throughout 2009 and into early 2010, Pinnacle and PSG employees met numerous times to discuss Pinnacle's use and implementation of PSG's software and system.

On February 12, 2010, Pinnacle notified PSG that it was terminating its agreements with PSG effective immediately.  On February 16, 2010, Pinnacle launched a new web-based appraisal management system that PSG claims is substantially similar to PSG's copyrighted system.  In March 2010, Pinnacle hired the former PSG account manager.

PSG filed the complaint in the above-entitled action against Pinnacle on June 3, 2011, alleging three causes of action.  PSG alleges that Pinnacle intentionally copied, distributed, modified, transformed and adapted PSG's copyrighted software, and used it without authorization (copyright infringement); alleges that this unauthorized copying constituted an unlawful and unfair business practice under § 17200; and seeks a judicial declaration that PSG is the owner of the ABCTrak software and system, and that the web-based software appraisal system utilized by Pinnacle is based on or derived from or copied from PSG's AGCTrak system.  PSG seeks compensatory and punitive damages, and an accounting, and also seeks injunctive and declaratory relief.

The Subscription Agreement includes an arbitration provision, stating that "[a]ny claim or controversy arising out of or relating to this Agreement, which cannot be resolved between the Parties, shall be settled by arbitration in Pleasant Hill, California, in accordance with . . . the Commercial Arbitration Rules of the American Arbitration Association."

In July 2011, counsel for Pinnacle sent counsel for PSG a letter asserting that the claims in the complaint arise out of or are related to the Subscription Agreement between the parties, and that the dispute must be submitted to arbitration.  Counsel for PSG responded that PSG would agree to submit the dispute to arbitration only if Pinnacle would agree in advance that the arbitrator(s) had the authority to grant equitable relief as demanded in the complaint.  Pinnacle now seeks an order compelling PSG to submit this

2

dispute to arbitration without any preconditions, and dismissing the entire action.

Section 2 of the FAA provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and dismiss or stay the proceedings. 9 U.S.C. §§ 3, 4. The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

The role of the federal courts in these circumstances is limited to determining whether the arbitration clause at issue is valid and enforceable under § 2 of the FAA. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). That is, the court must determine whether there is an agreement between the parties to arbitrate; the claims at issue fall within the scope of the agreement; and the agreement is valid and enforceable. Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). Because of the strong policy favoring arbitration, doubts or ambiguities must be resolved in favor of and not against arbitration. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

Here, Pinnacle asserts, the requisites for arbitration are met – there is an agreement to arbitrate contained within the Subscription Agreement, the claims at issue (copyright infringement, unlawful business practices based on copyright infringement, and claim for declaratory relief) all "arise out of or relate to" the provisions in the Subscription Agreement allowing Pinnacle to use PSG's software but prohibiting Pinnacle from copying or reverse-engineering, or creating a derivative work from, the software; and PSG has made no showing that the arbitration agreement is not valid and enforceable.

In opposition, PSG asserts that because its complaint alleges copyright infringement, not breach of the Subscription Agreement, the case cannot be ordered to arbitration; that because Pinnacle previously "repudiated" the Subscription Agreement (when it informed PSG that it was terminating the Agreement), it cannot seek arbitration

under that agreement; and that even if the contract were enforceable, the arbitration provision does not extend to the claims alleged in the complaint. The court finds none of these arguments persuasive.

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, the court focuses on the factual allegations in the complaint rather than on the legal causes of action asserted. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 622-24 & nn.9, 13 (1985). If the allegations underlying the claims "touch matters" covered by the parties' agreement, then those claims must be arbitrated, whatever legal labels are attached to them. <u>Id.</u> at 624 n.13.

Here, in contrast to the situation in the case cited by PSG – <u>Kuklachev v. Gelfman</u>, 600 F.Supp. 2d 437 (E.D.N.Y. 2009) – the right to use the copyrighted material is the very subject of the Subscription Agreement, which prohibits Pinnacle from copying or reverse-engineering, or creating a derivative work of, the software. Thus, the claims alleged in the complaint clearly "arise out of or relate to" the Subscription Agreement. The fact that PSG chose to sue Pinnacle for copyright infringement rather than breach of the Subscription Agreement is irrelevant under the standard articulated above.

Moreover, the court finds it unnecessary for the parties to agree in advance of the arbitration that the arbitrator has the authority to award equitable relief, as it is up to the arbitrator to decide what form of relief he/she may award. The arbitration provision in the Subscription Agreement places no limits on the available relief, and PSG has cited no authority supporting its position.

The date for the hearing on this motion, previously set for September 14, 2011, is VACATED.

**IT IS SO ORDERED.**

Dated: September 8, 2011

PHYLLIS J. HAMILTON
United States District Judge

4